IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA ex rel.<br>    FLAVIANO DELAOLA, | )<br>)<br>) | |
|     Petitioner, | ) | No. 10 CV 665 |
| v. | )<br>) | Judge Robert W. Gettleman |
| RICH PILLOW, Warden,<br>    Jacksonville Correctional Center, | )<br>)<br>) | |
|     Respondent. | ) | |

## MEMORANDUM OPINION AND ORDER

Petitioner Flaviano Delaola, an inmate currently incarcerated at the Jacksonville Correctional Center in Jacksonville, Illinois, has filed an amended pro se petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner has also requested an evidentiary hearing on the claims raised in his amended petition, and appointment of counsel to assist him in that hearing. For the reasons below, the habeas petition and requests for an evidentiary hearing and for appointment of counsel are denied. The court declines to issue a certificate of appealability.

## BACKGROUND

Petitioner and his codefendant, Alex Cruzado, were tried in a joint trial in the Circuit Court of Cook County, Illinois, which ended in a mistrial when the jury could not decide on a verdict. See Rule 23 Order, People v. Delaola, Nos. 1-94-0154 and 1-94-0616, at 1 (Ill. App. Ct. Apr. 16, 1996). After a retrial, petitioner and Cruzado were convicted of first-degree murder, and petitioner was sentenced to forty-five years' imprisonment. The Illinois Appellate Court summarized the evidence presented at that trial as follows:

> Ivan Amador and Ray Issa testified that in August 1990, they were members of the Latin Kings, a street gang that was part of a larger alliance called the "People," who were

enemies of a separate coalition of street gangs called the "Folks," which included the Milwaukee Kings street gang.

On August 4, 1990, at about 1:45 a.m., Amador, Issa and John McIntyre left a party near Superior and Damen to eat. In an alley near a fast-food restaurant's parking lot, Cruzado and [petitioner] crossed their paths and walked ahead of them in the same direction. Issa testified that Cruzado and [petitioner] were six to ten feet in front of them when McIntyre said, "Look at them punks." Cruzado and [petitioner] turned around, and Cruzado pulled out a gun, saying "Folk love, Folks." Amador testified that he heard Cruzado say "What's up, Folks?" Cruzado started shooting. Amador hid behind a garbage can, and Issa ran. Amador saw both Cruzado and [petitioner] shooting; five or six shots were fired. McIntyre, also running, was shot and fell face first onto the pavement. Cruzado and [petitioner] then put their hoods on and ran towards Damen Avenue. Amador ran after them to see where they were going. When Amador returned to the parking lot, he turned McIntyre over and saw cuts on his face and a puddle of blood.

Rule 23 Order, People v. Delaola, Nos. 1-94-0154 and 1-94-0616, at 2-3 (Ill. App. Ct. Apr. 16, 1996). On August 22, 1990, Chicago police officers brought petitioner and Cruzado in for questioning about their possible involvement in the murder. Petitioner and Cruzado both gave written statements to the police in which they admitted shooting McIntyre. Id. at 3. They were subsequently charged with McIntyre's murder.

Prior to trial, petitioner and Cruzado filed motions to quash their arrests and to suppress the incriminating statements they had made to police, arguing that they were arrested without probable cause and that their statements were the product of police coercion. The trial court denied both motions, finding that petitioner and Cruzado were not arrested until after they had given the incriminating statements, and that their statements were not coerced.

During his case-in-chief, petitioner presented an alibi defense. Cruzado and Juan Renteria both testified that they were drinking beer in a park with petitioner on the night of the murder. Id. at 5. Renteria further testified that he was present at the police station when

2

Cruzado and petitioner were questioned, and he heard screaming and banging against the walls. Id.

Petitioner also presented the prior sworn testimony of Nelson DeJesus, an eyewitness to the shooting, who had testified at the first trial and died before the retrial. DeJesus had testified that he witnessed the shooting and had briefly seen the shooters' faces, but was unable to identify Cruzado and petitioner in a lineup. Id. at 11-12. At the retrial, the prosecution objected (based on relevancy) to the portion of DeJesus's testimony stating that he had been unable to identify Cruzado and petitioner in a lineup. Id. at 11. The court excluded that portion of DeJesus's testimony. Id.

Petitioner appealed, raising seven claims relevant to the instant petition:

(A) The trial court deprived him of his right to confrontation by not allowing him to impeach Amador with his prior felony conviction;

(B) the trial court denied him his right to present a defense by not allowing him to question Amador and Issa about their gang affiliations;

(C) the trial court denied him his right to present a defense by not allowing him to present DeJesus's prior sworn testimony or present Public Defender Gallagher's testimony about the DeJesus lineup;

(D) the trial court denied him his right to present a defense by not allowing him to challenge Amador and Police Officer David Betz with prior inconsistent statements from the first trial, and refusing to instruct the jury on prior inconsistent statements;

(E) the trial court was biased against him, as evidenced by its improper comments, ridiculing Cruzado's counsel, and challenging the credibility of defense witnesses;

(F) trial counsel was ineffective for failing to object to hearsay testimony offered by Officer Betz; and

(G) trial counsel was ineffective for failing to object to rebuttal evidence in the form of testimony from two employees of the hospital where the victim's body was taken.

The Illinois Appellate Court affirmed petitioner's conviction, finding that although the trial court committed several errors, the errors were harmless in light of the "substantial" evidence of guilt, including petitioner's confession, "which detailed the facts of the crime and was corroborated by two eyewitnesses." Id. at 7-9, 11-12, 17-19, 20-22, 25-27, 35-36.

Petitioner filed a petition for leave to appeal ("PLA") in the Illinois Supreme Court, raising three claims relevant to the instant petition:

(A) the trial court violated his right to a fail trial by improperly challenging Renteria's credibility;

(B) the trial court denied him his right to present a defense by preventing him from presenting DeJesus's testimony from the first trial; and

(C) admission of Betz's hearsay evidence violated petitioner's right to confrontation.

PLA, People v. Delaola, No. 81065. The court denied the PLA. Order Denying PLA, People v. Delaola, No. 81065 (Ill. Oct. 2, 1996).

In December 1996, petitioner filed a pro se petition for postconviction relief, followed by a 2005 counseled supplemental petition, raising seven claims relevant to the instant petition:

(A) the trial court denied him a fair trial by ridiculing Cruzado's attorney when he objected to the prosecutor's cross-examination of Renteria, and challenging Renteria's credibility;

(B) the trial court denied him compulsory process and violated his right to present a defense by not admitting Nelson DeJesus's testimony from the first trial, or allowing petitioner to present the testimony of Gallagher;

(C) the trial court denied him his right to confront witnesses by refusing to allow impeachment of Ivan Amador with a prior felony conviction;

4

(D) the trial court denied him his right to confront witnesses and present a defense by refusing to allow him to cross-examine Amador and Ray Issa about their gang affiliations;

(E) trial counsel was ineffective for failing to object to improper rebuttal evidence from Willa Nathaniel and Lilly Beth Segurra;

(F) trial counsel was ineffective for failing to present the testimony of Julio Rice and Rolando Otero at the hearing on the motion to quash his arrest; and

(G) he was unlawfully arrested and coerced into confessing to the crime, and Rice's statement to police was coerced.

Petition for Post-Conviction Relief, People v. Delaola, No. 90 CR 21869; Supplemental Petition for Post-Conviction Relief, People v. Delaola, No. 90 CR 21869. The trial court dismissed the petitions without an evidentiary hearing.

Petitioner appealed, raising two claims relevant to the instant petition:

(A) trial counsel was ineffective for failing to call Rolando Otero to testify at a hearing on his motion to quash arrest; and

(B) his counsel on direct appeal was ineffective for failing to raise trial counsel's ineffectiveness for failing to subpoena Julio Rice to testify at the hearing on a motion to quash arrest.

The Illinois Appellate Court affirmed the trial court's dismissal. Rule 23 Order, People v. Delaola, No. 1-06-2904 (Ill. App. Ct. Sept. 30, 2008).

Petitioner filed another PLA, raising the same two claims. PLA, People v. Delaola, No. 107525. The Illinois Supreme Court denied the PLA. Order Denying PLA, People v. Delaola, No. 107525 (Jan. 29, 2009).

In December 2009, petitioner filed a petition for a writ of habeas corpus. In June 2010, petitioner filed the instant amended petition for a writ of habeas corpus, raising the following four claims:

5

(1) the trial court violated his Sixth and Fourteenth Amendment rights to due process and a fair trial;

(2) petitioner's arrest was unlawful, his confession was coerced, and Rice's statement was coerced, in violation of petitioner's Fourth and Fourteenth Amendment rights;

(3) trial counsel was ineffective; and

(4) petitioner is actually innocent and his conviction was a fundamental miscarriage of justice.

Petitioner requests that the court hold an evidentiary hearing on the claims raised in his amended habeas petition and requests appointment of counsel to represent him at that evidentiary hearing.

## **DISCUSSION**

**I.   Petitioner's First Claim**

Petitioner claims that the trial court violated his right to due process and a fair trial by:

(A) preventing defense counsel from presenting evidence of Amador's prior conviction or questioning Amador about his gang affiliation;

(B) preventing defense counsel from questioning Issa about his gang affiliation;

(C) preventing defense counsel from (1) introducing DeJesus's prior testimony or (2) presenting Gallagher as a witness;

(D) not allowing defense counsel to challenge Amador and Betz with their prior inconsistent statements, and disallowing a proposed jury instruction on inconsistent statements; and

(E) criticizing defense counsel and challenging defense witnesses' credibility.

With the exception of one part of 1(C) and one part of 1(E), these claims were not raised through one complete round of state court review and are therefore procedurally defaulted. 28 U.S.C. § 2254(b) (requiring exhaustion of state remedies); O'Sullivan v. Boerckel, 526 U.S. 838,

6

845 (1999); Guest v. McCann, 474 F.3d 926, 929 (7th Cir. 2007). Petitioner raised 1(A), (B), and (C)(2)—that the trial court prevented petitioner from presenting Gallagher's testimony—on direct appeal, but not in the ensuing PLA, and again in his postconviction proceedings in state trial court, but not on postconviction appellate review or in that round's PLA. Petitioner raised 1(D) on direct appeal, but not in his PLA in that round, or in subsequent postconviction proceedings.[1] Because claims 1(A), (B), (C)(2), and (D) were thus not raised through one complete round of state court review, they are procedurally defaulted. See Guest, 474 F.3d at 930.

Claim E has four parts: (1) the trial court criticized defense counsel during Mercurio's cross-examination; (2) the trial court improperly challenged defense witness Calhoun's credibility; (3) the trial court criticized defense counsel for objecting during defense witness Renteria's cross-examination; and (4) the trial court improperly challenged Renteria's credibility. Petitioner raised the first two of these arguments on direct appeal, but not in the PLA in that round or in petitioner's postconviction proceedings. Petitioner raised the third argument on direct appeal, but not in his PLA on direct appeal, and in his postconviction proceedings in the trial court, but not in his postconviction appeal or in the PLA in that round. Claim 1(E)(1), (2), and (3) are therefore procedurally defaulted.

No grounds exist for excusing this procedural default. The court may excuse procedural default upon a showing of cause and prejudice or actual innocence, Coleman v. Thompson, 501

---

[1] Further, one aspect of this claim—that the trial court erred in disallowing a proposed jury instruction on prior inconsistent statements—is a state law issue that is not cognizable on federal habeas review. See Taylor v. Gilmore, 508 U.S. 333, 344 (1993) (in noncapital cases, instructions that include state law errors do not provide a basis for federal habeas relief).

U.S. 722, 750 (1991), but petitioner has not established either. To demonstrate cause and prejudice, the petitioner must show that an "objective factor external to the defense impeded [petitioner's] counsel's efforts to comply with the State's procedural rule," such as: "(1) interference by officials that makes compliance . . . . impractical; (2) constitutionally ineffective assistance of counsel; [or] (3) a showing that the factual or legal basis for a claim was not reasonably available to counsel." Guest, 474 F.3d at 929 (internal quotations omitted). Petitioner, however, has not attempted to show—nor, as the record reflects, could he show—cause for failing to raise these claims through a complete round of state court review. As for actual innocence, a petitioner must "present clear and convincing evidence that, but for the alleged error, no reasonable juror would have convicted him." Dellinger v. Bowen, 301 F.3d 758, 767 (7th Cir. 2002). But here, petitioner acknowledges that five of the twelve jurors in his first trial (which he does not claim suffered from analogous errors) would have convicted him. Therefore, petitioner cannot show that no reasonable juror would have convicted him but for these errors.

Finally, two parts of petitioner's first claim are not procedurally defaulted: 1(C)(1)'s claim that the trial court prevented petitioner from presenting DeJesus's full testimony and 1(E)(4)'s claim that the trial court improperly commented on Renteria's credibility. These claims, however, fail on the merits.

The Illinois Appellate Court determined that the trial court had erred in both of these situations, but that these errors were harmless in light of the substantial evidence of petitioner's guilt. A petitioner is not entitled to a writ of habeas corpus unless the challenged state court decision was: (1) "contrary to, or involved an unreasonable application of, clearly established

8

Federal law, as determined by the Supreme Court of the United States;" or (2) "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). These findings were not contrary to, or an unreasonable application of, clearly established Supreme Court precedent, i.e., Chapman v. California, 386 U.S. 18 (1967). See Johnson v. Acevedo, 572 F.3d 398, 404 (7th Cir. 2009) (if state court's conclusion that error was harmless under Chapman was reasonable, federal habeas relief is inappropriate).

Under Chapman, an error is harmless when the reviewing court concludes beyond a reasonable doubt that the error did not contribute to a finding of guilt. 386 U.S. at 24. As the state appellate court found, there was substantial evidence of petitioner's guilt, most importantly petitioner's confession. Petitioner and Cruzado made separate, detailed confessions that were corroborated by each other and by the in-court testimony of Amador and Issa. Thus, because of the substantial evidence of petitioner's guilt, the state appellate court's determination that any error was harmless was not unreasonable.

## II. Petitioner's Second Claim

Petitioner claims that his Fourth and Fourteenth Amendment rights were violated because his arrest was unlawful, his confession was coerced, and Rice's statement was coerced. Petitioner did not assert this claim in his original habeas petition filed in December 2009. Instead, he added the claim in his amended petition, filed in June 2010. This claim does not relate back to the claims in the original petition, and it is now untimely.

28 U.S.C. § 2244(d)(1) imposes a one-year statute of limitations for filing habeas petitions. The limitations period began to run on the date petitioner's conviction became final,

9

December 31, 1996—90 days after his PLA was denied on October 2, 1996. See 28 U.S.C. § 2244(d)(1)(D) (limitations period begins on date when factual predicate of claims could have been discovered through due diligence); Anderson v. Litscher, 281 F.3d 672, 675 (7th Cir. 2000) (statute of limitations begins to run when direct appeal in state court is concluded, including 90-day period in which petition for writ of certiorari could have been filed in the United States Supreme Court). Petitioner filed a postconviction petition on December 23, 1996, which tolled the statute of limitations until January 29, 2009, when the Illinois Supreme Court denied his PLA. 28 U.S.C. § 2244(d)(2); Lawrence v. Florida, 127 S. Ct. 1079, 1083-84 (2007) (statute of limitations is tolled during pendency of postconviction proceedings, not including time during which certiorari could be sought in the United States Supreme Court). The statute of limitations thus expired one year later, on January 29, 2010.

Petitioner mailed his original habeas petition on December 4, 2009, and the court clerk received it in February 2010. Because the court deems it to have been filed on December 4, 2009, see Jones v. Bertrand, 171 F.3d 499, 502 (7th Cir. 1999) (pro se habeas petition deemed filed when given to proper prison authorities, not upon receipt by court clerk), the original habeas petition was filed within the limitations period. The pendency of that habeas petition did not, however, toll the limitations period. Duncan v. Walker, 533 U.S. 167, 172 (2001) ("other collateral review" in § 2244(d)(2)'s tolling provision refers only to state proceedings). Thus, when petitioner filed his amended habeas petition in June 2010, the statute of limitations had expired.

Amendments to a habeas petition made after the limitations period has run may relate back to the original petition only if "the amendment asserts a claim or defense that arose out of

10

the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." Fed. R. Civ. P. 15(c)(2); see 28 U.S.C. § 2244 (allowing for a habeas petition to be amended "as provided in the rules of procedure applicable to civil actions"). A criminal trial, conviction, or sentence itself is not a transaction or occurrence for purposes of relation back in the federal habeas context. Mayle v. Felix, 545 U.S. 644, 662 (2005) ("If claims asserted after the one-year period could be revived simply because they relate to the same trial, conviction, or sentence as a timely filed claim, AEDPA's limitation period would have slim significance."). Generally, "[a]n amended habeas petition . . . does not relate back . . . when it asserts a new ground for relief supported by facts that differ in both time and type from those the original pleading set forth." Id. at 650.

In Mayle, the Supreme Court provided two examples of claims that would be sufficiently "tied to a common core of operative facts" to warrant relation back: (1) when the original petition alleged a Brady violation and the amended petition alleged the government failed to disclose a specific report, both petitions referring to evidence obtained at the same time by the same police department; and (2) when the original petition challenged the trial court's admission of recanted statements and the amended petition challenged the trial court's refusal to allow the defendant to show the statements had been recanted. Id. at 664 n.7. The Court also cited Moore's Federal Practice for the proposition that "relation back [is] ordinarily allowed 'when the new claim is based on the same facts as the original pleading and only changes the legal theory.'" 3 J. Moore, et al., Moore's Federal Practice § 15.19, p. 15-82 (3d ed. 2004).

Here, petitioner's claim that his confession was coerced does not relate back to the original petition. The most closely related allegation in the original petition is that the trial court

11

made an incorrect evidentiary ruling by denying petitioner leave to present evidence that Sergeant West told him what to say in his confession. This allegation is factually, not just legally, separate from the claims petitioner added in his amended petition: that Sergeant West beat him and Cruzado to obtain confessions, and that petitioner's arrest was unlawful.

Nor has petitioner demonstrated a basis for equitable tolling. See Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005) (party seeking equitable tolling bears burden of showing that he has been pursuing his rights diligently and that an extraordinary circumstance prevented him from timely filing). Because petitioner raised these issues in his postconviction proceedings in state court, he was clearly aware of the factual basis for this new claim when he later filed his original habeas petition. Petitioner does not allege that an extraordinary circumstance prevented him from timely filing these claims. Therefore, petitioner's failure to timely file his second claim is not excused by equitable tolling.

Moreover, even if petitioner's second claim was not time-barred, it is procedurally defaulted. Petitioner raised it in his postconviction petition, but not on postconviction appeal or in a postconviction PLA. He therefore failed to raise it in a complete round of state court review, rendering the claim procedurally defaulted. See Guest, 474 F.3d at 930.

### III. Petitioner's Third Claim

Petitioner claims that his trial counsel was constitutionally ineffective because he:

(A) failed to present Julio Rice and Otero at a suppression hearing;

(B) failed to object to Betz's hearsay testimony; and

(C)     failed to object to the State's improper rebuttal evidence in the form of testimony from Nathaniel and Segurra.

Petitioner did not assert claim 3(A) in his original habeas petition, and it is now time-barred, for the same reasons discussed above with regard to petitioner's second claim. Claim 3(A) does not relate back to the original habeas petition, which did allege ineffective assistance of trial counsel, but not in relationship to the suppression hearing. Amendments do not relate back if they assert "a new ground for relief supported by facts that differ in both time and type from those the original pleading set forth." Mayle, 545 U.S. at 650. Although the Seventh Circuit has not addressed how Mayle applies to an amended habeas petition seeking to add a new claim of ineffective assistance to the original petition's ineffective assistance claim, the courts of appeals to have addressed the issue have uniformly interpreted Mayle to mean that one ineffective assistance claim does not automatically relate back to another. See United States v. Gonzalez, 592 F.3d 675, 680 (5th Cir. 2009); United States v. Hernandez, 436 F.3d 851, 858 (8th Cir. 2006); United States v. Ciampi, 419 F.3d 20, 24 (1st Cir. 2005). Here, petitioner's new claim of ineffective assistance at his suppression hearing is not related, within the meaning of Mayle, to the ineffective assistance allegations in his original habeas petition. Further, as discussed above with regard to petitioner's second claim, he has failed to demonstrate an adequate basis for equitable tolling of the statute of limitations. Claim 3(A) is therefore untimely and may not be considered on its merits.

Moreover, even if claim 3(A) was not time-barred, petitioner did not fairly present to the state courts one part of claim 3(A)—that trial counsel was ineffective for failing to present Rice at the suppression hearing—thus rendering that part of 3(A) procedurally defaulted. Although petitioner raised this claim in his postconviction petition, he did not raise it in his postconviction

13

appeal or in his postconviction PLA. He maintained an argument based on the same underlying facts (i.e., that Rice was not presented at the suppression hearing), but he argued that his direct appeal counsel was ineffective for failing to argue that trial counsel was ineffective for failing to present Rice. It is not sufficient that two claims arise from the same underlying facts. See Sweeney v. Carter, 361 F.3d 327, 333 (7th Cir. 2004). Rather, to fairly present the claim and avoid procedural default, petitioner needed to maintain the same constitutional claim throughout a complete round of state court review.

Claim 3(B), alleging that petitioner's trial counsel was ineffective because he failed to object to hearsay testimony offered by Officer Betz, is also procedurally defaulted because petitioner failed to fairly present it to the state courts. On direct appeal, petitioner argued this claim as a violation of his right to a fair trial, and claimed ineffective assistance based on trial counsel's failure to request a limiting instruction. Then, in his PLA on direct appeal, petitioner claimed that the court violated his right to confrontation by admitting Betz's testimony, but did not argue that his trial counsel was ineffective for failing to object to that testimony. Thus, although petitioner raised the underlying factual matter, he did not provide the state courts a full and fair opportunity to consider the claim that trial counsel was ineffective for failing to object to Betz's hearsay testimony. See Sweeney, 361 F.3d at 333; Lewis v. Sternes, 390 F.3d 1019, 1026 (7th Cir. 2004) ("[A]n assertion that one's counsel was ineffective for failing to pursue particular constitutional issues is a claim separate and independent of those issues.").

Finally, claim 3(C), which alleges ineffectiveness of trial counsel based on his failure to object to the State's improper rebuttal evidence in the form of testimony from Willa Nathaniel and Lilly Beth Segurra, is procedurally defaulted because petitioner failed to advance it through

14

one full round of state court review. Although he advanced this claim on direct appeal, he failed to raise it in the subsequent PLA. He also raised it in his postconviction petition, but not in his postconviction appeal or PLA. Therefore, the claim was not raised through a full round of state court review and is procedurally defaulted. See Guest, 474 F.3d at 930. As explained above, petitioner's inclusion of an ineffective assistance claim (3(A)) through one full state court round does not save this claim. See, e.g., Stevens v. McBride, 489 F.3d 883, 894 (7th Cir. 2007).

Finally, for the reasons discussed with respect to the procedurally defaulted components of petitioner's first claim, the court finds no reason to excuse procedural default for any part of petitioner's ineffective assistance claims.

## IV.    Petitioner's Fourth Claim

Petitioner's fourth and final claim, that he is actually innocent, is not cognizable as a freestanding claim. See Herrera v. Collins, 506 U.S. 390, 404 (1993). Further, as explained above, although actual innocence may excuse procedural default, it does not in this case.

## V.    Requests for Evidentiary Hearing and for Appointment of Counsel

Petitioner requests an evidentiary hearing "into the unresolved claims in dispute by the parties," and further requests that the court appoint him counsel "to aid and assist in the same." Petitioner does not, however, explain what function an evidentiary hearing would serve or identify "unresolved" factual claims. Nor can the court discern a purpose for such a hearing. Petitioner's requests for an evidentiary hearing is therefore denied, as is his request for appointment of counsel to assist him in that hearing.

## VI.    Certificate of Appealability

A habeas petitioner is entitled to a certificate of appealability only if he has made a substantial showing that he was denied a constitutional right. 28 U.S.C. § 2253(c)(2); see Miller-El v. Cockrell, 537 U.S. 322, 336 (2003); Evans v. Circuit Court of Cook County, Ill., 569 F.3d 665, 667 (7th Cir. 2009). To make that showing, a petitioner must demonstrate that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." Slack v. McDaniel, 529 U.S. 473, 484 (2000). When the court has denied a habeas petition on procedural grounds without reaching the petition's underlying constitutional claims—as is the case here for all petitioner's claims except parts of 1(C) and 1(E)—a petitioner must also show that jurists could debate whether the court's procedural ruling was correct. Id. at 484-85.

Here, as explained above, petitioner's claims (except parts of 1(C) and 1(E)) are either procedurally defaulted because they were not raised in a full round of state court review, procedurally defaulted because they were not fairly presented in state court, or time-barred. As for the issues that the court decided on the merits (petitioner's claims that trial court prevented his counsel from presenting DeJesus's full testimony and improperly commented on Renteria's credibility), petitioner has not shown, nor would he be able to show, that reasonable jurists could debate that this court should have resolved these questions in a different manner. The court therefore declines to issue a certificate of appealability on any of petitioner's claims.

## **CONCLUSION**

For the reasons discussed above, the petition for a writ of habeas corpus is denied, as is petitioner's request for an evidentiary hearing and for appointment of counsel. The court declines to issue a certificate of appealability.


**ENTER:    June 3, 2011**

_____
**Robert W. Gettleman
United States District Judge**